**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

CIVIL ACTION NUMBER:

MARIA MARQUEZ, an individual,

Plaintiff;

v.

SALAMANDER ASPEN EMPLOYER, LLC, a Delaware limited liability company, SALAMANDER ASPEN, LLC, a Delaware limited liability company, MARGARET BOYLE, an individual, and DARREN ZEMNICK, an individual;

Defendants.

**COMPLAINT AND JURY DEMAND**

Plaintiff Maria Marquez, by her undersigned attorneys, Jester Gibson & Moore, LLP, states as follows for her Complaint against Salamander Aspen Employer, LLC, Salamander Aspen, LLC (collectively, "Salamander"), Margaret Boyle, and Darren Zemnick:

**PARTIES**

1. Defendant Salamander Aspen, LLC, is a Delaware limited liability company whose principal place of business is 100 West Washington Street, P.O. Box 2082, Middleburg, Virginia 20117.

2. Salamander Aspen Employer, LLC is a Delaware limited liability company whose principal place of business is 100 West Washington Street, P.O. Box 2082, Middleburg, Virginia 20117.

3. Salamander Aspen, LLC and Salamander Aspen Employer, LLC (collectively,

1

"Salamander") operate the Aspen Meadows Resort located at 845 Meadows Road, Aspen, Colorado 81611 ("Aspen Meadows" or the "Resort").

4. Defendant Zemnick is an individual who is a citizen of the State of Colorado.

5. Defendant Boyle is an individual who is a citizen of the State of Colorado.

6. Plaintiff Maria Marquez ("Marquez") is a citizen of the State of Colorado.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

8. Marquez asserts legal claims under the Americans with Disabilities Act Amendments Act of 2008 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the Colorado Anti-Discrimination Act ("CADA"), C.R.S. §§ 24-34-402 *et seq*. Marquez's claims under CADA are so like and related to her ADA claims that they form part of the same case or controversy.

9. Venue is proper in this Court because all the acts or omissions giving rise to Marquez's claims occurred in the District of Colorado. 28 U.S.C. § 1391(b)(2).

10. Marquez has met all procedural prerequisites for and timely filed this Complaint and Jury Demand pursuant to the ADA and CADA.

## FACTS

11. Marquez began working as a Housekeeper at the Aspen Meadows Resort in December 1994.

12. Marquez excelled as a Housekeeper, resulting in the Resort trusting her with additional responsibilities and a promotion to Housekeeping Supervisor in or around 2017.

13. As a Housekeeping Supervisor, Marquez was responsible for overseeing and managing the housekeeping staff's day-to-day operations, verifying room cleanliness, and training staff.

14. In 2019, Marquez fell while working at the Resort and suffered a grade two sprain and

strain of the medial collateral ligament in her left knee. Following Marquez's injury, she was substantially limited in multiple major life activities, including, but not limited to, lifting, kneeling, crawling, pushing, and pulling.

15. Therefore, following her injury, Marquez was a qualified individual with a disability within the meaning of the ADA and CADA.

16. As a result of Marquez's disability, she submitted doctor's notes to the then-operator of the Aspen Meadows Resort, Dolce Hotels and Resorts ("Dolce"), of her physical restrictions and need for reasonable accommodation related to her disability.

17. Marquez requested that Dolce restructure her job as the Housekeeping Supervisor to limit lifting, carrying, pushing, pulling, crawling, kneeling, and climbing. Dolce approved Marquez's request, and she worked with these approved restrictions in place until her knee surgery.

18. During this period, Marquez remained qualified for and could perform the essential functions of her job with or without accommodations.

19. In or around October 2021, Marquez underwent knee replacement surgery, which resulted in her being out of work for a portion of 2022.

20. Marquez returned to work in or around April 2022.

21. Following her surgery and recovery, Marquez informed Dolce of her disability and substantial physical limitations in her ability to perform manual tasks, including lifting, carrying, pushing, pulling, crawling, kneeling, and climbing

22. Following her return to work, Marquez remained qualified for her position and was able to perform the essential functions of her position with or without accommodation.

23. In or around May 2022, Salamander took over the operations and management of the Aspen Meadows Resort following the expiration of Dolce's management agreement with the Aspen

Meadows Resort. At which point, Marquez became an employee of Salamander.

24. At the time Salamander assumed operational and managerial duties for the Resort, it was aware of Marquez's physical limitations and that she was receiving workers' compensation benefits related to her knee injury.

25. At the time Salamander assumed operational and management duties for the Resort, Marquez continued to perform her job with the same reasonable accommodations that Dolce had previously approved upon her return to work.

26. Salamander did not object to or attempt to revise Marquez's reasonable accommodations.

27. Salamander never asserted that Marquez's reasonable accommodations created any undue hardship for the business.

28. Following Salamander's assumption of operational and management duties for the Aspen Meadows Resort, it never expressed concerns regarding Marquez's performance or ability to perform her job.

29. Marquez thrived in her role and was awarded the "Service Professional of the Month" in June 2020, which was signed by, among others, Defendant Boyle.

30. Marquez continued working with reasonable accommodations until February 2024.

31. On February 1, 2024, Marquez attended an appointment in connection with the closing of her associated workers' compensation case, and her physician drafted a closing report containing her findings (the "Closing Report").

32. The Closing Report contained some of the same physical restrictions that Salamander had previously approved, and Marquez was working with for several years without issue.

33. The Closing Report also identified that Marquez had reached maximum medical

improvement and would require permanent accommodations for her disability.

34. On or around February 5, 2024, Marquez delivered the Closing Report to Salamander. The Closing Report constituted a request for reasonable accommodation under the ADA and CADA.

35. Marquez had a reasonable, good-faith belief that she was entitled to accommodation for her physical impairment.

36. The Closing Report put Salamander on notice of Marquez's status as permanently disabled and her resulting limitations.

37. On February 7, 2024, Defendant Boyle confirmed receipt of the Closing Report and presented Marquez with an ultimatum: go on unpaid leave pursuant to the Family and Medical Leave Act ("FMLA") or have her restrictions lifted entirely.

38. Defendant Boyle notified Marquez that she needed to complete the leave paperwork by February 22, 2024.

39. Marquez, however, did not request leave pursuant to the FMLA. Instead, Marquez merely requested that Salamander approve the restrictions outlined in the Closing Report and allow her to continue working.

40. Moreover, FMLA is an insufficient reasonable accommodation under the circumstances because it would not appropriately accommodate her permanent disability, as 12 weeks of leave would have made no difference for her disability.

41. Notably, the restrictions in the Closing Report were nearly identical to the restrictions Salamander had previously approved of and Marquez had been working with for several years without issue.

42. After February 7, 2024, Salamander removed Marquez from the schedule, and she did not work another day for the remainder of her employment.

43. To avoid FMLA leave, Marquez returned to her physician to request that the restrictions be lifted entirely.

44. On February 9, 2024, Marquez's physician faxed Salamander a revised closing report that eliminated any physical restrictions related to crawling, kneeling, squatting, and climbing (the "Revised Report"). However, Marquez's physician refused to revise Marquez's physical restrictions related to lifting, repetitive lifting, carrying, pushing, and pulling anything 10 lbs or larger.

45. The Revised Report constitutes a request for reasonable accommodation under the ADA and CADA.

46. Marquez had a reasonable, good-faith belief that she was entitled to accommodation for her physical impairment.

47. The Revised Report put Salamander on notice of Marquez's disability and resulting limitations.

48. Between February 9, 2024, and February 21, 2024, Salamander did not respond to Marquez regarding her request for reasonable accommodation.

49. On February 21, 2024, Marquez sent Defendants Zemnick and Boyle an email updating them on the status of the FMLA paperwork they had demanded she submit.

50. Defendant Zemnick notified Marquez that he would grant a 15-day extension for her to complete the FMLA medical questionnaire, but threatened that if she failed to do so, they "will need to discuss [her] Leave of Absence, which at that time will be an Unapproved time off."

51. He further stated that Salamander "only [had] one doctor's form which contradicts itself and does not assist [Salamander] in having an interactive conversation to know what [Marquez's] limitations [were] and if [Salamander could] accommodate those limitations."

52. Despite Salamander's purported confusion, Defendants did not contact Marquez to

6

discuss or clarify any confusion regarding the Closing Report or Revised Report.

53. Defendant Zemnick understood that Marquez was requesting reasonable accommodation through the Closing Report and/or the Revised Report.

54. Salamander refused to engage in the interactive process in good faith by feigning confusion despite the Closing and Revised reports containing specific and detailed information regarding Marquez's disability and resulting limitations.

55. Salamander discriminated and retaliated against Marquez for requesting reasonable accommodation when it threatened her with disciplinary action if she failed to submit FMLA paperwork.

56. On February 22, 2024, Marquez again returned to her physician in an attempt to revise her work restrictions. Marquez's physician revised Marquez's work restrictions to clarify that she was permanently restricted from lifting 10 lbs. and drafted a report containing the same ("Final Report").

57. Shortly thereafter, Marquez's physician sent a letter to Defendant Zemnick explaining that Marquez "is under the impression that she is not able to continue in her current position, which she has held for many years." She further noted that Marquez "has been working with her current restrictions for more than one year and has been able to get her work done. I would respectfully request that you consider that she continue in her current position. It is not possible to rescind her work restrictions, as this would be falsifying medical documentation."

58. On February 29, 2024, Defendant Boyle emailed Marquez stating that the letter does not state Marquez's restrictions and that they cannot continue the interactive process. Defendant Boyle again threatened Marquez that it would be considered an unapproved time offer if she failed to submit the FMLA paperwork by March 8, 2024.

59. Then, on March 8, 2024, Defendant Boyle emailed Marquez: "Your updated

7

restrictions were due today, 03/08/2024. It is the end of our business day and I have not received them from you. You were allowed 30 days to return these forms to continue the interactive process. Since we have not received them, and we noticed your locker was cleaned out, we accept your resignation effective today, 03/08/2024. We will miss and we wish you all the best in your future endeavors."

60. Marquez, however, did not clean out her locker or resign. Instead, Salamander was attempting to manufacture her resignation to avoid having to continue to accommodate her disability.

61. Defendants terminated Marquez because of her disability and/or in retaliation for her requests for reasonable accommodations.

62. Defendants Boyle and Zemnick approved, recommended, and/or directed Marquez's termination because of her disability and/or requests for reasonable accommodations.

63. Defendants discriminated against Marquez on the basis of her disability by failing to accommodate her disability or even engage in the interactive process in good faith.

64. Defendants Boyle and Zemnick approved, recommended, and/or directed Salamander's actions in failing to accommodate Marquez's disability.

65. Marquez's reasonable accommodations would not have caused undue hardship, as evidenced by her performing the job functions under the same or more restrictive accommodations for years.

## STATEMENT OF CLAIMS

### First Claim for Relief
### Disability Discrimination in Violation of the ADA and CADA
### (against Defendant Salamander)

66. The foregoing allegations are realleged and incorporated herein by reference.

67. Marquez was an employee of Salamander.

68. At all times relevant to the events described herein, Marquez was a qualified individual

with a disability within the meaning of the ADA and CADA.

69. Marquez informed Salamander of her disability via medical documentation.

70. Marquez was qualified for her position and was able to perform the essential functions of her position with or without reasonable accommodation.

71. Salamander discriminated against Marquez on the basis of disability by subjecting her to adverse employment actions, including, but not limited to, removing her from the schedule and terminating her employment.

72. As a direct and proximate result of Salamander's conduct, Marquez has suffered and continues to suffer economic loss, as well as emotional distress and other non-pecuniary damages.

73. Salamander's actions were intentional, willful, and/or carried out with reckless disregard for Marquez's rights under the ADA and CADA.

## Second Claim for Relief
### Denial of Reasonable Accommodation in Violation of the ADA and CADA
### (against Defendant Salamander)

74. The foregoing allegations are realleged and incorporated herein by reference.

75. Marquez was a qualified individual with a disability within the meaning of the ADA and CADA.

76. Marquez was qualified for her position and was able to perform the essential functions of her position with or without reasonable accommodation.

77. Marquez informed Salamander of her disability via medical documentation.

78. Through the Closing Report and Revised Report, Marquez requested reasonable accommodation for her disability in the form of job restructuring related to physical work restrictions for her day-to-day duties.

79. Salamander failed to accommodate her disability or engage in the interactive process

9

in good faith to determine a suitable accommodation.

80. Granting the reasonable accommodation would not have caused undue hardship.

81. Salamander's failure to accommodate caused Marquez's discharge, whether constructive or otherwise.

82. As a direct and proximate result of Salamander's conduct, Marquez has suffered and continues to suffer economic loss, as well as emotional distress and other non-pecuniary damages.

83. Salamander's actions were intentional, willful, and/or carried out with reckless disregard for Marquez's rights under the ADA and CADA.

### Third Claim for Relief
### Retaliation in Violation of the ADA and CADA
### (against Salamander)

84. The foregoing allegations are realleged and incorporated herein by reference.

85. Marquez engaged in protected activity under the ADA and CADA, including, not limited to, requesting reasonable accommodations for her disability.

86. Salamander was aware of Marquez's protected activity.

87. Shortly after Marquez engaged in protected activity, Salamander took material adverse actions against Marquez, including, but not limited to, removing her from the schedule, threatening disciplinary action, and terminating her employment.

88. Salamander took adverse actions against Marquez because of Marquez's protected activity.

89. As a result of Salamander's unlawful actions, Marquez has suffered and continues to suffer damages, including, but not limited to, lost wages and benefits, as well as emotional distress and other non-pecuniary damages.

90. In retaliating against Marquez, Salamander acted deliberately and maliciously and with

reckless indifference to her protected rights.

### Fourth Claim for Relief
### Aiding and Abetting Unlawful Employment Practices in Violation of the CADA
### against Defendants Zemnick and Boyle.

91. The foregoing allegations are realleged and incorporated herein by reference.

92. At all relevant times, Marquez was an employee within the meaning of the CADA, C.R.S. §§ 24-34-301 *et seq*.

93. Marquez was subjected to unlawful discrimination and retaliation on the basis of her disability in violation of the CADA.

94. Defendants Zemnick and Boyle were not Marquez's direct employer, but were considered a "person" as defined in the CADA, and acted individually or in concert with others in perpetrating discrimination and retaliation against Marquez.

95. Defendants Zemnick and Boyle knowingly and substantially aided, abetted, incited, compelled, or coerced the discriminatory and retaliatory conduct against Marquez by obstructing accommodations, encouraging or directing discriminatory and retaliatory decisions, and participating in the discriminatory and retaliatory termination of Marquez's employment.

96. Defendants Zemnick and Boyle's conduct was intentional and in violation of CADA, which prohibits aiding and abetting unlawful employment practices.

97. As a direct and proximate result of Defendant Zemnick and Boyle's actions, Marquez has suffered economic, emotional, and other non-pecuniary damages.

### JURY DEMAND

Marquez seeks a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

**WHEREFORE,** Marquez respectfully requests that this Court grant her the following relief:

A. Back pay and economic damages, including any wages, salary, employment benefits, or other compensation lost as a result of Defendants' unlawful acts;

B. Front pay and/or reinstatement;

C. Compensatory/non-economic damages;

D. Consequential damages;

E. Punitive damages;

F. Liquidated damages;

G. Nominal damages;

H. Reasonable attorney fees and costs;

I. Pre- and post-judgment interest; and

J. Such other and further relief as the Court deems necessary and proper.

Respectfully submitted this 2nd day of May 2025.

JESTER GIBSON & MOORE, LLP

*/s/ Dan R. Godin*
Dan R. Godin, CO Bar No. 56524
Justin M. Plaskov, CO Bar No. 45053
1999 Broadway, Ste. 3225
Denver, CO 80202
dgodin@jgllp.com
jplaskov@jgllp.com